## Rooney v. First National Bank & Trust Co. of Newtown

*Hugh B. Eastburn,* for plaintiff.

*Ross & Smith* and *Achey & Power,* for defendant.

KELLER, P. J., January 22, 1951.—This action was brought to recover the sum of $960.10, which plaintiff alleges was delivered to defendant bank by plaintiff's agent on July 6, 1948, for deposit in plaintiff's account at the bank, but which sum was not credited to plaintiff's account or otherwise accounted for by defendant. A jury trial was had and at the close of plaintiff's case, the court, on motion of defendant, entered a compulsory nonsuit. The matter is now before the court to take off the nonsuit.

The sole issue at the trial was whether or not there was deposited on July 6, 1948, in defendant bank the sum of $960.10, for credit to the checking account of plaintiff. There was no direct evidence that this sum of money was delivered to and received by the bank or its teller.

The evidence, on behalf of plaintiff, was that this particular sum of money was received by plaintiff, as the earnings of her restaurant on July 4, 1948, and was counted in her apartment, on the evening of Monday, July 5, 1948, which was celebrated as a holiday,

the stated holiday of July 4th having fallen on a Sunday, in the presence of plaintiff's manager, Mr. O'Connor, his wife, and several other of plaintiff's employes, and with an appropriate deposit ticket made out, placed in a bag, which bag together with other bags containing counted and segregated amounts received from the restaurant upon the days of July 1, 2, 3 and 5, 1948, with an additional sum of $150 used for making change, all with their separate deposit tickets, in separate bags, was placed in a large envelope, which envelope was then tied with a cord and placed in an unlocked bureau drawer in plaintiff's bedroom. This was done about midnight of Monday, July 5th, and, according to the evidence, that was the last time that anyone testifying saw any of the contents of that large envelope until about 10 o'clock on the morning of July 6th, at which time the envelope, with its contents, was handed by plaintiff's manager and agent, Mr. O'Connor, to a Mr. Headley, a teller of defendant bank, who opened the gate over his counter, received the envelope and laid it aside without first checking its contents.

The testimony was further to the effect that Mr. O'Connor took the envelope from plaintiff's bedroom without checking its contents and left plaintiff's premises with the envelope in his automobile, driven by his wife, at about 10 o'clock in the morning of July 6th, in a hurry to catch a train at Langhorne for the purpose of going to Philadelphia; that he had placed the envelope on the front seat of the car between himself and his wife; that on the way to the bank he stopped at a newsstand for a morning paper; that when he got to the bank he picked up the envelope, entered the bank and went to the head of a line of depositors and handed the envelope through the open gate over the counter without waiting to have its contents checked, and then left hurriedly to catch his train, leaving the plaintiff's bank passbook with the teller and leaving it to the

teller to count whatever might be in the envelope and enter the credit for whatever amounts of money might be therein.

Although neither plaintiff, Miss Rooney, nor her agent, Mr. O'Connor, had checked the contents of the envelope before the latter's departure to make the deposit at defendant bank and both stated that they were unable to say what the envelope contained when it was delivered to the bank, it is nevertheless, plaintiff's contention that whatever amount had been placed in the envelope at 12 o'clock midnight of July 5th is presumed to have been in the envelope at the time of its delivery to the bank teller on the following morning and consequently, the bank is chargeable therefor. Defendant denies that it received this deposit and that it is chargeable therefor and contends this presumption upon which plaintiff bases her claim does not prevail, under the circumstances, inasmuch as the testimony reveals that this money was counted in the presence of Mr. O'Connor and his wife and several other employes of plaintiff, who were in and out of plaintiff's apartment while this was being done; that they saw the bags containing the alleged deposits placed in the manila envelope on the evening of July 5th; that the contents were not checked or counted before Mr. and Mrs. O'Connor took them to Newtown for deposit; that there were a number of guests and employes in the premises at the time, some of whom were in and out of plaintiff's apartment on the following morning before Mr. O'Connor left the premises; that plaintiff's apartment was unlocked during the night and was accessible to anyone who might have wished to enter the same; and that, although plaintiff had recently returned from the hospital and stated that she was a light sleeper because of her condition, there was a reasonable possibility that this particular day's receipts might have been mislaid and not placed in the envelope and were lost or that this unprotected en-

velope with its contents lay unlocked and insecure in the bureau drawer during the night available to the cupidity and predatory instincts of anyone of the numerous persons who could have had easy access to it, or that someone might have tampered with the envelope between the time it was placed in the drawer and delivery to the Newtown Bank so that, at best defendant's liability could only be based on a presumption upon a presumption that the money was in the envelope when it was delivered to it.

The sums actually credited by the bank as having been deposited on July 6th correspond with five separate deposit amounts computed by plaintiff in the presence of and with the aid of several persons connected with plaintiff's establishment, viz.: $170.30, $101.82, $489.90, $500.51 and $150. Assuming that a further cash amount of $960.10 was also in a separate bag in the envelope at midnight, it does not follow that it was there many hours later when the unchecked envelope was handed in to the bank. Until plaintiff, by competent evidence, showed delivery to this bank, it was not for the defendant to give evidence of nondelivery, or at any time to attempt to explain what happened to the sum of $960.10 claimed by plaintiff, as to which it could have no knowledge. Neither plaintiff nor O'Connor would definitely state that this sum of $960.10 was delivered at the bank. On the contrary, both testified positively that they did not know that this sum was actually handed over to the bank's official.

Assuming that it might be held to be a reasonable presumption that when an intended bank deposit is placed in an envelope, which envelope is taken directly to the bank and handed to its teller without it having been opened, the envelope contained the deposit previously placed therein, such a presumption does not, necessarily, prevail, under the circumstances of this case, where it appears that the deposit was placed in

an envelope on the night before its delivery to defendant bank and the same was kept in an unlocked and unprotected bureau drawer during that night. In order to show delivery of the deposit to defendant bank, it becomes necessary that we make an additional presumption that the envelope had not been disturbed during the night and that the deposit was still therein when it was removed the following morning and, further, that it had not been tampered with before it was delivered to the bank.

It is our opinion that when plaintiff rested her case there had not been sufficient evidence to support her claim to warrant its submission to the jury, and that the so-called circumstantial evidence offered by plaintiff did not establish a prima facie case. In Bube v. Weatherly Boro, 25 Pa. Superior Ct. 88, 93, the court says:

"Whenever circumstantial evidence is relied upon to prove a fact, the circumstances must be proved and not themselves presumed . . . No presumption can be drawn from a presumption; if there is no fixed or ascertained fact from which the inference of another fact may be drawn, the law permits none to be drawn from it . . . To permit a presumption to be a base for a further presumption would be to permit a jury 'to spin out the chain into the regions of barest conjecture'."

Again, in Buck v. Quaker City Cab Co., 75 Pa. Superior Ct. 440, the court sums up the applicable law as follows:

"The language of the Supreme Court in Passenger Ry. Co. v. Henrice, 92 Pa. 431, 434, is applicable: 'This would be to found a presumption upon a presumption, which is never allowed. A presumption should always be based upon a fact, and should be a reasonable and natural deduction from that fact. The true rule was correctly stated by Mr. Justice Thompson, in

Douglass v. Mitchell's Exrs., 11 Casey 443: "That as proof of a fact, the law permits inferences from other facts, but does not allow presumptions of fact from presumptions. A fact being established, other facts may be, and often are ascertained by just inferences. Not so with a mere presumption of a fact; no presumption can with safety be drawn from a presumption; there being no fixed or ascertained fact from which an inference of fact might be drawn, none is drawn." ' "

See also Welsh v. Railroad Co., 181 Pa. 461, 463-64; Walters v. Federal Life Insurance Company, 320 Pa. 588, 591; Hall v. Pennsylvania Railroad Company, 60 Pa. Superior Ct. 235, 241; 31 C. J. S. 762, §116 (b).

Plaintiff's second reason in support of her motion to take off the nonsuit, that the court was in error in refusing to hear the prior practice of plaintiff in making deposits with defendant bank, is without merit and must be dismissed because any prior practice would be immaterial insofar as the issues herein involved are concerned.

Plaintiff's third reason, complaining of the court's refusal to admit certain exhibits which were taken from the daily cash book of plaintiff, which proposed to show the actual amount of daily cash receipts, is also without merit and must be dismissed, because the exhibits therein contained related to matters foreign to the issues herein involved and, therefore, defendant's objection to the admission of this testimony was properly sustained.

We fail to see wherein the trial judge was in error in granting a compulsory nonsuit at the conclusion of plaintiff's testimony. Plaintiff utterly failed to produce any evidence to show delivery to and deposit with defendant bank or its agent, the sum of $960.10, which she claims. To sustain plaintiff's contention and permit a jury to consider evidence such as was presented here, would expose every bank of deposit to ruthless and un-

conscionable demands, under circumstances that would find them helpless and entirely unable to make any defense, except by mere denial. Accordingly, it is our conclusion that plaintiff's motion to take off the compulsory nonsuit must be dismissed.

And now, to wit, January 22, 1951, for the reasons hereinbefore stated, plaintiff's motion to take off the compulsory nonsuit is dismissed.